JjDUFRESNE, Judge.
This suit arises from a two-car collision in which Rebecca Denton, plaintiff, injured a spinal disc. A jury awarded her damages, and the trial judge further awarded her penalties and attorney fees based on the court’s finding that the underinsured motorists insurer had acted arbitrarily and capriciously, or without probable cause, in not timely tendering an offer on the claim. For the following reasons, we set aside the penalties and attorney fees; in all other respects we affirm the judgment. The jury in this case found Denton, plaintiff, 20% at fault in the accident, and Lillie Reed, defendant, 80% at fault. Because neither party asserts as error this allocation of fault, we need not recite the facts of the incident further. Reed had in effect a $50,000.00 liability policy, the full amount of which her insurer paid to Denton prior to trial. Denton had two applicable co-primary underinsured motorists policies in effect, and one of these insurers also settled prior to trial. The remaining UM insurer, USAA Casualty Insurance Company, stipulated that it would be liable for one-half of any damage | ?award over $50,-000.00, but made no settlement offer.
After finding plaintiff 20% at fault in the accident, the jury fixed damages as follows:
Past medical expenses -0-Future medical expenses $15,000.00
Physical pain and suffering, past, present and future $11,000.00
Mental anguish, including loss Of enjoyment of life,
Past, present and future $11,000.00
Permanent impairment $15,000.00
Past lost wages $18,000.00
TOTAL $70,000.00
The result of this verdict was that the award, when reduced by 20%, left a judgment of $56,000.00, which was $6,000.00 above the $50,000.00, previously paid under the liability policy. Because USAA was by stipulation liable for only one-half of this amount under its UM policy, the effective judgment against it was $3,000.00.
In post-trial proceedings USAA agreed that past medical bills of $5,259.05 should have been included in the judgment, and that issue was resolved amicably. Plaintiff also sought a JNOV to have the general *219 damage award adjusted upward, but the trial judge rejected that motion. During trial, the parties agreed to submit to the court the issue of whether the UM insurer had acted arbitrarily, capriciously, or without probable cause in failing to make an offer prior to trial, and she found that it had so acted. Pursuant to La. R.S. 22:658, she imposed a penalty of $1,000.00, |3and awarded attorney fees of one-third of the $70,000.00 verdict, or $23,338.33. Pursuant to La. R.S. 22:1220, the unfair trade practices portion of the insurance code, she imposed an additional penalty of $5,000.00. Both parties now appeal.
The defendant urges three assignments of error: 1) the evidence was insufficient to support an award of future medical expenses; 2) the trial judge erred in finding that the insurer was arbitrary and capricious in failing to make a settlement offer; and 3) if the insurer was arbitrary and capricious, the trial judge nonetheless awarded excessive attorney fees. For her part, plaintiff asserts that the general damage award was too low.
Defendant’s first two assignments of error relate to determinations of factual issues. As such, the standard of review in this court is whether the factual determinations made by the jury and judge are manifestly erroneous or clearly wrong, Rosell v. ESCO, 549 So.2d 840 (La.1989). Under that standard, the inquiry is not what factual determinations might have been made by the appellate court had it been sitting as the trial court, but rather whether such determinations made by the trier of fact are reasonable in light of the entire record, id.
The evidence bearing on these questions is as follows. The accident was on Friday, October 29, 1993, and plaintiff suffered no apparent injuries from it. However, over the next few days she developed soreness in her neck and back, and on the following Tuesday she telephoned her doctor, Edward Thornhill. He advised heat and rest, but her symptoms persisted so she went to see him on November 12. On this occasion he recommended massages for the soreness. Shortly after that visit and until early December, plaintiff was basically asymptomatic, and she testified ^further that during that period she did her normal work routine as an attorney, and probably exercised and jogged as well.
Sometime in the first week of December she noted the onset of lower back pains, and over the next several days the pain started radiating into her leg causing her difficulty in walking. She said that she thought she had pulled a hamstring muscle, and again called Dr. Thornhill for an appointment. On December 9, she saw an associate of Dr. Thornhill’s, a Dr. Bagle-man. She did not mention the automobile accident to this doctor, but instead associated the onset of the pains with raking leaves in her yard the previous week. This physician thought that she indeed had a hamstring muscle problem, but recommended that she see a specialist to be sure.
The following day, December 10, she first saw Dr. Warren Bourgeois, an orthopedic surgeon. His initial diagnosis was nerve root irritation at the L5-S1 level of the back. He prescribed anti-inflammatory medication and a steroid injection. A MRI revealed a bulging disc at that same level, but without any constriction of the spinal canal, and he saw no need for surgery.
A visit of January 3, 1994, revealed improvement in the leg pain, but still some back pain and hamstring tightness. Physical therapy was recommended. On January 28, the leg pain had returned and plaintiff was given a total disability rating for six weeks. At the end of that period, she was not completely asymptomatic, but there had been a “very significant” improvement, and the disability rating was removed. Two weeks later, however, the back and leg pains flared up again, and on March 25, an epidural steroid injection was administered, followed by as second shot on Is April 5. There was a great improve- *220 merit with these shots for about six weeks, when some leg discomfort reappeared. A third shot was given on July 27, and by late September plaintiff was asymptomatic and able to work.
Some eight months later, on May 19, 1996, plaintiff returned to the doctor, again with complaints of leg pain and some numbness on the outside of her foot. A MRI of June 12, showed that the affected disc was herniated, and on July 7, the doctor was of the opinion that there was permanent nerve damage causing the numbness in the foot. He anticipated that plaintiff would have recurrent episodes of nerve root irritation, but hoped that there would be no permanent pain or persistent weakness in the leg.
Two months later, in early September, plaintiff was in a second automobile accident. She testified that she immediately felt a sharp pain in her back, and after a few days she returned to Dr. Bourgeois. He found neck pain and stiffness, and some lower back pain but without radiation into the leg. He did note, however, tightness in the hamstring muscle which was much more severe that he had seen it before. His impression was strain to the neck and back, but without any flare up of the nerve root irritation.
Over a year later, in December, 1996, plaintiff called the doctor for refills on her prescriptions, and the following month came to his office complaining of back and leg pains. A MRI of February 1, 1997, showed the herniation at L5-S1, and also showed a bulge at L3-4, and moderate degeneration at L4-5. The doctor said that this showed a definite progression of the back problems. It was his overall opinion that the L5-S11 ^herniation was caused by the first accident, but he said that the findings as to the two other discs more probably than not related to the second accident.
As to future treatment, the doctor said that there was no immediate need for surgery and he did not see that as likely in the near future. He explained, however, that any significant new trauma could cause further herniation of the disc and lead to surgery. He also noted that a such a trauma could result from a sneeze or cough, or simply from bending over. When asked to quantify the probability of future surgery, he said:
Well, that would be, again, based solely on her symptoms. I would — -you know, based on the fact that she has had progression over the past four or five years, its probably between — I don’t know— 25% and 50% chance that she could end up having to have surgery.
He estimated the cost for such surgery to be between $16,300.00, and $25,000.00.
The defense called Dr. Edward Soli, the radiologist who had read the firs MRI in December of 1993. His opinion of the condition of the L5-S1 disc was that it was the result of a common degenerative process that would have taken years to develop, and that it could not have manifested itself in a few weeks or even months following a single trauma. At trial, defendant stipulated that plaintiff did indeed have a herniated disc, but it did not agree that this condition was caused by the first accident or that future surgery would be needed.
On the basis of the above evidence, the jury apparently found that future surgery would more probably than not be required, and awarded $15,000.00, for this element of damages. Defendant notes here that Dr. Bourgeois, the only witness to address this issue, was somewhat equivocal |7on this point and gave an estimate of only up to 50% probability for future surgery. It asserts that there was thus insufficient evidence to support the award. While we agree that this evidence is scant and had we been sitting as the trier of fact we might well have rejected this claim, that is not the standard of review applicable here. Rather, the inquiry is whether there is a reasonable basis in the record for the jury’s determination on this point. We conclude that there is. The doctor’s testi *221 mony was that almost any trauma could precipitate a further degeneration of the discs, including sneezing or coughing. There was further evidence to show that the condition had been steadily worsening over the years since the accident, and would probably continue to do so. Although his estimate of the probability of surgery was only 50% at the high end, when this factor is considered with the other evidence about the progressive nature of the condition and plaintiffs own experience, we find that the factual determination that such treatment will more probably than not be required in the future is a reasonable one on the basis of the entire record.
Defendant next argues that it was error to find that it had acted arbitrarily and capriciously in the case. With this we agree. Both La. R.S. 22:658 and 1220, are penal statutes which must be strictly construed, Perkins v. Guaranty National Insurance Co., 95-229 (La. App 3rd Cir. 11/2/95), 667 So.2d 559, writ denied 96-0759 (La. 5/31/96), 673 So.2d 1033; Spear v. Tran 96-1490 (La.App. 4th cir. 9/18/96), 682 So.2d 267. In both statutes, there is a specific requirement that penalties can only be imposed where the insurer acts arbitrarily, capriciously or without probable cause in assessing a claimant’s proof of loss. In the present case, the only question before us is whether the UM insurer had reasonable cause to contest | Rplaintiff s claim that her damages exceeded the $50,000.00, payment she received from the liability insurer. In finding that the insurer was unreasonable, the trial judge stated that the insurer had stipulated that plaintiff had a herniated disc, that a review of cases requiring surgery for this condition showed that damages for this type of injury generally exceeded the limits of the liability policy here, and therefore that the insurer’s actions in making no tender whatsoever, were unreasonable. In this court’s opinion, this finding is manifestly erroneous.
We first note that the trial judge’s ruling was based in large part on an unwarranted extension of the stipulation. While it was agreed at the time of trial that plaintiff had a herniated disc, there was no stipulation either that the first accident was the cause of that problem or that the condition would require future surgery. As to causation, while Dr. Bourgeois was of the opinion that the accident was the cause, Dr. Soil said that the condition which he observed in the MRI of a few weeks after the accident was the result of a years long process of degeneration. Dr. Bourgeois also said that a trauma as common as a sneeze or a cough could exacerbate the condition, and if, as Dr. Soil indicated, the disc had been degenerating prior to the accident, then plaintiffs idea expressed to Dr. Bagleman that she may have injured it raking leaves would not be an unreasonable possibility. Moreover, there was a second accident involved which, according to Dr. Bourgeois, was probably responsible for the injuries to the other two discs. Also, as noted above, the question of whether plaintiffs condition would become one requiring surgery was a close one that could well have been resolved in defendant’s favor. Considering all of these factors, it is clear that under a strict construction of the statutes there |9was no reasonable basis in the record to find that the insurer had acted arbitrarily, capriciously or without probable cause in contesting plaintiffs claim that her damages exceeded $50,000.00, and the' finding to the contrary was manifestly erroneous. We therefore set aside that portion of the judgment casting the insurer for penalties and attorney fees. Because of our disposition of this assignment, defendant’s third assignment of error as to excessive attorney fees is moot.
The final issue before us is plaintiffs cross-appeal wherein she asserts that the general damage award was too low. The standard of review of general damage awards is whether the jury abused its much discretion in fixing the award. In *222 Youn v, Maritime Overseas Corp., 628 So.2d 1257 (La.1993), the court reiterated the long standing rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact. In this inquiry, consideration must be given to the particular injuries and their effects on the particular circumstances of the particular plaintiff. It is only when the appellate court determines, for articulable reasons distinct to the case at hand, that the jury abused its much discretion, that it may set aside the award as either too high or too low.
In the present case, plaintiffs medical treatments have been summarized above. She further testified that she is now in her mid-thirties. She said that she was at one time a ballet dancer and loved to dance, that she was otherwise quite athletic, and was a scuba diver, but that these activities were now closed to her. She did say, however, that she could work regularly, and still did a number of non-impact exercises. Aside from the numbness on the outside of her foot, she has no residual problems and 11(1aside from an occasional flare up of soreness in her back and leg is basically pain-free. As to the future surgery, while an award was made for this element of damages, that award was actually below the lowest estimate of costs given by Dr. Bourgeois, indicating that the jury probably based its calculations on a finding that the second accident was also implicated in this potential surgery.
Considering all of these factors, while we find the general damage award for physical pain and suffering, mental anguish, and permanent impairment of $37.000.00, to be on the low side, we are unable to articulate any reasons why it constitutes an abuse of the jury’s much discretion in fixing the award. We therefore affirm that award.
For the foregoing reasons, that portion of the judgment awarding plaintiff attorney fees and penalties pursuant to La. R.S. 22:658 and 1220, is hereby set aside. In all other respects, the judgment is affirmed.

AFFIRMED IN PART, SET ASIDE IN PART.