785 So.2d 79 (2001)
Janice A. VAUGHN, Individually and as Natural Tutrix of the Minor Child, Brian Gerald Vaughn
v.
Dirk FRANKLIN, White Castle Fertilizer Cooperative, Iris Callegan, Hernandez Farms, Inc., Royal J. Spragio, Jr., Susan Spragio Brewer, Dusty Spragio Benfield, and Gwen Spragio Williamson
No. 2000 CA 0291.
Court of Appeal of Louisiana, First Circuit.
March 28, 2001.
Opinion on Denial of Rehearing May 1, 2001.
*81 W. Shelby McKenzie, Brandon K. Black, Baton Rouge, for Appellee, Louisiana Farm Bureau Cas. Ins. Co.
Kenneth H. Laborde, Leo R. McAloon, III, New Orleans, for Appellant, St. Paul Insurance Company.
Before: CARTER, C.J., FOIL, and WEIMER JJ.
CARTER, C.J.
Janice A. Vaughn (plaintiff) filed suit on behalf of her minor son, Brian, alleging he became ill after being sprayed with liquid agricultural chemicals while playing in his grandparents' back yard in White Castle. She alleged the chemicals were aerially applied by pilot Dirk Franklin to sugar cane fields farmed by Iris Callegan and Hernandez Farms, Inc. (Hernandez) that were situated adjacent to the grandparents' property. She further alleged this application was done on June 8, 1991, pursuant to a contract between Hernandez and White Castle Fertilizer Cooperative, Inc. (Co-op).
Plaintiff sued, inter alia, Franklin, his employer, Dirk W. Franklin, Inc., Callegan, Co-op., Hernandez, Louisiana Farm *82 Bureau Casualty Insurance Company (Farm Bureau), and The St. Paul Insurance Company (St. Paul), as a member company of the United States Aircraft Insurance Group,[1] seeking damages for Brian's personal injuries and her own loss of consortium with him.[2] Plaintiff alleged Farm Bureau insured Callegan and Hernandez and St. Paul insured Co-op. Farm Bureau provided a defense to Hernandez. It also defended Callegan under a reservation of rights until summary judgment in Farm Bureau's favor was granted that found no coverage for Callegan under the Farm Bureau policy and no duty to defend Callegan any further.[3] St. Paul defended Co-op, its named insured, as well as Franklin, who was a named additional insured under the policy.
Suit was filed in May 1992. Plaintiff filed a request for production of St. Paul's policy, to which St. Paul responded in January 1993 that it would make a copy of the policy available for inspection at a mutually convenient time and place. It further responded that if plaintiff should desire a copy of the policy, it wanted a protective order "as the policy is proprietary in nature." St. Paul produced the policy to plaintiff under a protective order. Farm Bureau filed a request for production of the St. Paul policy in October 1993. St. Paul did not respond, and Farm Bureau did not file a motion to compel.
Many witnesses were deposed and documents produced during the next three years. Co-op's and Franklin's records showed that no liquid chemicals were sprayed in the vicinity of the property of Marjorie and Dealis Vaughn, Brian's grandparents, on June 8, 1992. Franklin testified that he had dropped dry fertilizer pellets in the area on June 7, but that he had sprayed nothing near the Vaughns' property on June 8. Callegan testified his property had not been sprayed with anything since 1989. Brian's grandmother, however, was adamant that she had seen Franklin's crop duster fly over Callegan's property and spray a liquid on June 8 that descended in a mist on Brian, wetting his arms.
In January 1997, the trial court, during a status conference, ordered St. Paul to provide a copy of its policy to Farm Bureau, which it did. The policy contained a property-grower-as-insured endorsement, which provided coverage to "any person or organization who is the grower of the property with whom the policyholder has agreed to conduct aerial applications." A few days later Farm Bureau sent a letter to St. Paul stating St. Paul's policy provided a duty to defend and indemnify Hernandez and Callegan. Farm Bureau made a formal demand on St. Paul for reimbursement of the amount of the settlement entered into between it and plaintiff ($10,000.00)[4] and for all costs and expenses *83 incurred in the defense of Hernandez and Callegan.
St. Paul rejected Farm Bureau's demands. Farm Bureau then filed a cross-claim for contribution, defense costs, and penalties and attorney fees under Revised Statutes 22:658 and 22:1220. The cross-claim was tried on stipulations, depositions, and documentary evidence. The trial court found St. Paul acted arbitrarily in failing to provide a defense but was not in bad faith. It rendered judgment against St. Paul, ordering it to pay to Farm Bureau damages of $70,457.43, which included the full amount Farm Bureau paid in settlement, $10,000.00; $29,932.29 and $30,525.14 incurred in defending Callegan and Hernandez, respectively; legal interest from date of judicial demand through August 30, 1999, of $14,188.69; penalties of $4,045.74 under Revised Statute 22:658; attorney fees of $100,000.00 under Revised Statute 22:658; legal interest on the total amount of the judgment from date of judgment until paid; and Farm Bureau's costs of $2,500.00 incurred in prosecuting the cross-claim.
St. Paul appealed, asserting nine assignments of error. Among its complaints are the trial court's finding that it had a duty to defend, the court's finding that it acted arbitrarily and was thus liable for penalties and attorney fees under Revised Statute 22:658, the amount of attorney fees awarded, the finding that it was liable to Farm Bureau for the full amount of its settlement with plaintiff when there was no evidence in the record that Hernandez was an additional insured under the policy or that Hernandez was liable to plaintiff, and the award of postjudgment interest on the judgment that already included prejudgment interest. Farm Bureau answered the appeal, assigning as its only assignment of error that the trial court erred in failing to award penalties under Revised Statute 22:1220.

DID ST. PAUL HAVE A DUTY TO DEFEND HERNANDEZ AND CALLEGAN?
The threshold issue in this case is whether St. Paul had a duty to defend Hernandez and Callegan. The fountainhead case on this issue is American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). In Czarniecki, the facts were undisputed. The named insured, Jesse Waters, gave full permission to use the car registered in his name to his stepson Randy. Randy loaned the car to his friend Hans. Hans in turn loaned the car to his friend Charley Czarniecki, a person unknown to Randy. After Charley collided with another vehicle while driving the car, Charley and his father were sued, along with State Farm and Aetna, Waters's insurers. Both insurers declined to provide coverage or a defense, asserting that the Czarnieckis were not omnibus insureds because Charley did not have implied permission to operate the vehicle. The supreme court agreed that there was no coverage. The fact, however, did not absolve the insurers from their duty to defend.
The court noted the general rule that the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The court then stated the following rule regarding an insurer's duty to defend its insured:
[T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
Thus, if, assuming all the allegations of the petition to be true, there would be *84 both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.
255 La. at 269, 230 So.2d at 259 (citation omitted).
This pronouncement by the supreme court has become known as the "eight-corners rule," i.e., an insurer must look to the four corners of the petition and the four corners of the policy to determine whether it has a duty to defend. When making this analysis, the allegations of the petition are liberally interpreted in determining whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend. Id. An insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Constr. Co., 93-2064, pp. 8-9 (La.8/18/94), 643 So.2d 1213, 1218. Although the allegations of the petition may ultimately turn out to be incorrect or untrue, the insurer is still obligated to provide a defense. Dugas Pest Control v. Mutual Fire, Marine & Inland Ins. Co., 504 So.2d 1051, 1054 (La.App. 1st Cir. 1987).
When we look within the four corners of the petition in this case, we find the following allegations in paragraph 7:
On or about the 8th day of June, 1991, co-defendant, Hernandez Farms, Inc., contracted with co-defendant, White Castle Fertilizer Cooperative, Inc., to apply agricultural chemicals onto the Hernandez Farm's sugar cane crop with a crop dusting airplane. Based upon information and belief, co-defendant, White Castle Fertilizer Cooperative, Inc., was to also apply agricultural chemicals onto the property leased by Iris Callegan.
A review of the four corners of the policy reveals the following endorsement:
The "who's covered" section appearing on Page 3 of your policy will include any person or organization who is the grower of the property with whom the policyholder has agreed to conduct aerial applications.
Thus, the petition, read broadly, alleges Co-op, St. Paul's named insured, agreed with Hernandez and Callegan, the growers, to conduct aerial applications. We note that the allegations regarding Callegan are somewhat ambiguous, probably because it is undisputed that there was no formal contract between Callegan and Co-op. The test is not, however, whether the allegations unambiguously assert coverage, but only that they do not unambiguously exclude coverage.
St. Paul argues that Czarniecki does not preclude looking beyond the facts pleaded in the petition to determine whether a defendant who is not the named insured is an omnibus insured under the policy. It contends that if the facts known outside of the petition show the defendant is not insured, there is no duty to defend. It bases this argument on two cases, the 1964 first circuit case of Smith v. Insurance Co. of Pennsylvania, 161 So.2d 903 (La.App. 1st Cir.), writ denied, 246 La. 344, 164 So.2d 350 (La.1964), and the federal case of Tichenor v. Roman Catholic Church, 32 F.3d 953 (5th Cir.1994).
In Smith, this court found that, under the contractual provisions in the policy, the insurer was obliged to defend even groundless actions against the named insured and the omnibus insured. The court looked beyond the allegations of the petition, however, to determine whether a party was actually an omnibus insured. The court stated that "the insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges the defendant is an insured or alleged facts, *85 which, if true, would make defendant an insured." 161 So.2d at 919. Thus, when the insurer proved that the facts alleged in the petition were false and that coverage was not extended to the alleged omnibus insured, it had no duty to defend.
Tichenor was a suit by a former altar boy who alleged he had been molested by a priest. The priest sought to force the insurer of the Archdiocese of New Orleans to defend him. The omnibus-insured clause in the policy provided coverage for any employee of the named insured who was acting within the scope of his duties. The complaint alleged he was acting within that scope. The federal fifth circuit found that since the priest's actions were, in fact, "well outside th[e] parameters" of his priestly duties, the insurer had no duty to defend. The court stated it did no violence to the law on duty to defend by looking beyond the complaint to determine whether the defendant was an additional insured. Tichenor, 32 F.3d at 963-964.
Both of those cases turn on the policy language that the insurer has a duty to defend even groundless suits against its insureds. This court in Smith and the federal fifth circuit in Tichenor reasoned that if the insurer can prove the defendant does not fit the policy definition of insured, despite the allegations of the petition, there is no contractual duty to defend. Both of these cases, however, conflict with Czarniecki.
Czarniecki involved alleged omnibus insureds, Mr. Czarniecki and his son Charley. Although plaintiff alleged in the petition that Charley was driving the vehicle with the permission of the insured, the insurers litigated, and won, the legal issue of whether Charley was a permittee. The court held Charley did not have implicit permission, and thus there was no coverage under the policy. Despite this result, the court found the insurers liable for failure to defend based on the allegations of the petition.
Czarniecki was decided in 1969, five years after Smith, and implicitly overruled Smith's holding that an insurer can look beyond the allegations of the petition when determining whether it has a duty to defend. It has been consistently followed and reiterated in subsequent Louisiana Supreme Court decisions.[5]Tichenor was decided five years after Czarniecki, but the federal court does not mention Czarniecki in its opinion.
St. Paul contends Czarniecki is not applicable to this case because of the difference in the posture of the defendants during defense of the case. The Czarnieckis argued throughout the litigation that Charley was a permittee and thus they were insureds under the policies. In the instant case, however, Hernandez and Callegan consistently maintained throughout the litigation that they did not contract with Co-op to have their fields sprayed on June 8. If there was no agreement between them and Co-op, they were not insureds under the St. Paul policy. St. Paul argues it could not have a duty to defend parties whose entire defense is based on assertions that, if true, meant they were not omnibus insureds under its policy.
While we understand the distinction St. Paul is trying to make, we believe that the broad language of Czarniecki does not allow us to look beyond the allegations of the petition. The eight-corners rule, which is well established in Louisiana jurisprudence, makes no exception for defenses inconsistent with coverage. Thus, we are constrained by Czarniecki to hold that the trial court was legally correct in finding St. *86 Paul had a duty to defend Hernandez and Callegan.

WAS ST. PAUL ARBITRARY IN DENYING A DEFENSE?
St. Paul contends the trial court was manifestly erroneous in finding it arbitrarily failed to defend Hernandez and Callegan. Although the trial court found St. Paul was arbitrary, it specifically found St. Paul was not in bad faith. Farm Bureau argues throughout its brief that St. Paul acted in bad faith and had "sinister motives," but it did not appeal the trial court's factual finding of good faith.
Bad faith means more than mere bad judgment or negligence; it implies a dishonest purpose or evil intent. Bond v. Broadway, 607 So.2d 865, 867 (La.App. 2nd Cir.1992), writ denied, 612 So.2d 88 (La.1993). Arbitrariness is a more venial offense; it is a willful and unreasoning action, without consideration for the facts and circumstances presented, or acting with unfounded motivation. See Brown v. Texas-LA Cartage, 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. An insurer's action in handling a claim is arbitrary when its willful refusal of a claim is not based on a good-faith defense. Calogero v. Safeway Ins. Co., 99-1625, p. 5 (La.1/19/00), 753 So.2d 170, 173. Statutes imposing liability for penalties and attorney fees are penal in nature and must be strictly construed to prevent penalties from being imposed on one who relies in good faith on valid defenses. Chateau v. City of Kenner, 97-1006, p. 13 (La.App. 5th Cir.5/13/98), 712 So.2d 256, 262, writ denied, 98-1545 (La.9/18/98), 724 So.2d 769. While a court may disagree with the interpretation the insurer places on its policy, its actions in refusing to pay should not necessarily subject it to penalties and attorney fees. Stewart v. Louisiana Farm Bureau Mut. Ins. Co., 420 So.2d 1217, 1220 (La.App. 3rd Cir.1982).
Clark E. Howard is in-house counsel for United States Aviation Underwriters, Inc., the management company for a pool of property and casualty insurers, including St. Paul, who combine to underwrite aviation insurance products on a stipulatedshare basis. Howard testified that upon receiving the file, he looked at the petition and the policy. He did not, however, attempt to determine whether there were omnibus insureds under the policy. He stated that his normal policy was not to do so unless the named insured asked him to, the omnibus insured demanded a defense, or a party was unrepresented after the other parties began making appearances, and it appeared there may have been some miscommunication. Barring one of these three circumstances, Howard testified, no effort would be made to determine whether there were omnibus insureds under the policy.
Maryjoy Salnardi was working in the claims department for United States Aviation Underwriters in 1996 when she received responsibility for the claims file on this suit. She did not recall ever making a determination of whether there was coverage for Hernandez or Callegan. She settled the claim for $99,000.00 and obtained a release of Franklin, his corporation, and Co-op. She stated she believed she was obtaining a release of all of St. Paul's insureds when the settlement was entered into.
St. Paul argues in brief that by the time Farm Bureau made demand upon it in 1997, the evidence was clear that Hernandez and Callegan were not covered by the St. Paul policy. The fallacy of St. Paul's entire argument, however, is that the duty to defend arose when it had knowledge that (1) it issued a policy of insurance that covered property growers who contracted *87 with the named insured and (2) Hernandez and Callegan had been sued based on allegations that they were property growers who had contracted with the named insured. See Armand v. Rapides Bank & Trust Co., 98-1664, pp. 12-13 (La.App. 3rd Cir.4/7/99), 732 So.2d 719, 726, writ denied, 99-1318 (La.6/25/99), 746 So.2d 604. Even though Hernandez and Callegan did not demand a defense immediately, St. Paul did not have the luxury of letting a coverage defense develop while waiting for the omnibus insureds to make such demand. The duty to defend arose upon notice of litigation, and St. Paul breached this duty long before discovery showed there was a likelihood that Hernandez and Callegan were not insureds. Moskau v. Insurance Co. of North America, 366 So.2d 1004, 1006 (La.App. 1st Cir.1978).
St. Paul's counsel makes a valiant effort to distinguish this case from Czarniecki and to show that St. Paul had no duty to defend when formal demand was made upon it in 1997. Unfortunately, it can offer no explanation why it did not defend Hernandez and Callegan when it received notice of the litigation in 1992. St. Paul's policy of making no effort to determine whether there are omnibus insureds unless a demand is made or the named insured requests it is certainly arbitrary. St. Paul did not act with a dishonest purpose; it simply did not act at all. The trial court was not manifestly erroneous in finding St. Paul was arbitrary in failing to defend Hernandez and Callegan.

SHOULD ST. PAUL INDEMNIFY FARM BUREAU FOR THE FULL AMOUNT OF ITS SETTLEMENT WITH PLAINTIFF?
St. Paul contends the trial court erred in ordering it to indemnify Farm Bureau for the $10,000.00 it paid to settle plaintiff's claims against Hernandez. St. Paul argues the evidence and pleadings "clearly negated the possibility the Hernandez Farms was an additional insured." Farm Bureau contends, however, that since St. Paul asserted no coverage defenses in the trial court, it cannot assert them now.
Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. Klumpp v. XYZ Ins. Co., 547 So.2d 391, 393 (La.App. 3rd Cir.), writ denied, 551 So.2d 1322 (La.1989). The party seeking indemnity has the burden of proving that the loss should be shifted to the indemnitor.
As a general rule, the one seeking indemnity must establish actual liability to recover. Terra Resources v. Lake Charles Dredging & Towing, 695 F.2d 828, 831 (5th Cir.1983). An exception to the rule is that the indemnitee need show only potential, rather than actual, liability on his part where the claim is based on a written contract, such as an insurance policy. Rovira v. LaGoDa, Inc., 551 So.2d 790, 795 (La.App. 5th Cir.1989), writ denied, 556 So.2d 36 (La.1990).
Farm Bureau is the party asserting it is entitled to indemnification. It thus has the burden of proving St. Paul, as the co-insurer of Hernandez, was potentially liable for the $10,000.00 Farm Bureau paid to plaintiff. Plaintiff alleged in her petition that Hernandez made a work upon its land that caused damage to plaintiff, rendering it liable under Louisiana Civil Code article 667.
None of the discovery done up to the date of the settlement, however, showed any potential liability of Hernandez. Coop's records show no aerial applications *88 taking place near the Vaughn property on June 8. The deposition testimony also showed no spraying of chemicals near the Vaughn property on that date. Franklin denied spraying liquid chemicals on Hernandez's property on June 8. Lisa Gautreaux, an agricultural environmental specialist supervisor with the Louisiana Department of Agriculture, testified her office was unable to identify any evidence that would suggest that an application of azinphos methyl (the chemical plaintiff alleged caused harm to her child) occurred anywhere near the Vaughn property on June 8. Kenneth Hernandez, the owner of Hernandez Farms, testified the property he owned near the Vaughn residence was not sprayed with pesticides or herbicides on June 8 and in fact was never sprayed because of its proximity to the Vaughns' home. Marjorie Vaughn, the only witness who testified a liquid was sprayed from Franklin's plane on June 8, stated the plane was over Callegan's property, not Hernandez's, when the mist drifted onto Brian. She stated she told Franklin "that was not Mr. Hernandez'[s] field back of my house; it was Callegan's ...."
Farm Bureau argues that St. Paul acknowledged liability when it settled with plaintiff and obtained the release of Franklin. Franklin, however, was in a very different posture from Hernandez; Marjorie Vaughn was adamant that Franklin had piloted the plane that sprayed Brian. We also note that the settlement Farm Bureau negotiated of $10,000.00 of its $300,000.00 limits is in the range of nuisance value.
In order to be indemnified by St. Paul for the amount it paid plaintiff in settlement, Farm Bureau had to prove Hernandez was potentially liable for making a work upon its land that injured plaintiff. Farm Bureau did not attempt to the show at trial the potential liability of Hernandez. For this reason, we find the trial court committed legal error in ordering St. Paul to indemnify Farm Bureau for the amount of the settlement; that portion of the judgment is reversed. See Rovira, 551 So.2d at 795.

DID THE TRIAL COURT ERR IN ITS AWARD OF DEFENSE COSTS?
St. Paul contends that even if it breached its duty to defend, the trial court erred in the amount of costs it assessed. The trial court ordered St. Paul to reimburse Farm Bureau for one hundred percent of the expenses of $30,525.14 it incurred defending Hernandez. It also ordered St. Paul to reimburse Farm Bureau for one hundred percent of the $29,932.29 incurred to "defend" Callegan, although $11,375.03 of that amount was to litigate the coverage issue. St. Paul contends Farm Bureau also had a duty to defend Hernandez and Callegan, and thus the two insurers are solidarily liable for the defense costs.
Farm Bureau does not dispute that it had a duty to defend Hernandez and Callegan, its named insureds. It argues, however, that under Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966 (La.1990), St. Paul is liable for all defense costs as a penalty because its bad faith caused the expenses to be incurred. We disagree for several reasons.
First, the trial court found St. Paul was not in bad faith. Second, Great Southwest is inapposite. The insurer in Great Southwest was solely liable for the excess judgment because its bad-faith failure to settle the case within policy limits was the direct cause of the excess judgment. In this case, however, St. Paul's failure to defend did not cause the defense costs to be incurred. Third, the "penalty" referred to *89 in Greort Southwest is for bad-faith breach of duty that directly causes the damages, which was not present in this case. Thus, we find the trial court erred in assessing one hundred percent of defense costs to St. Paul.
St. Paul further contends the trial court erred in ordering it to pay the costs incurred by Farm Bureau in litigating coverage. We agree with St. Paul that the costs of Farm Bureau's motion for summary judgment on coverage, which ultimately resulted in Farm Bureau being dismissed as Callegan's insurer and relieved it from the duty to defend Callegan, were not costs incurred in defense of Callegan. Cf. Howell v. American Cas. Co., 96-0694, p. 18 (La.App. 4th Cir.3/19/97), 691 So.2d 715, 727, writs denied, 97-1329, 1379 & 1426 (La.9/5/97), 700 So.2d 512, 515, 518. Farm Bureau argues in brief that if "St. Paul would have fulfilled its duty to defend Callegan, none of the costs incurred in litigating coverage would have been incurred by Farm Bureau." We fail to follow this logic.
Under the eight-corners rule, Farm Bureau had a clear duty to defend Callegan. It could be relieved of this duty, and then only prospectively, after it had proven Callegan was not its insured. Even if St. Paul had assumed the duty to defend Callegan from the outset, Farm Bureau would still have had an obligation to defend Callegan until it was dismissed on the coverage issue. Thus, these expenses flowed not from St. Paul's failure to perform, but from Farm Bureau's desire to be relieved of its duty to defend and exposure to liability.
Furthermore, Farm Bureau's cause of action against St. Paul arises from the conventional subrogation provision in the insurance policy, which provides that: "In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization ...." The costs incurred in proving Callegan was not an insured do not constitute "payment under the policy." In addition, Callegan had no right of recovery of the costs incurred in litigating a summary judgment against himself. For these reasons, we find the trial court committed legal error in assessing to St. Paul the $11,372.73 incurred by Farm Bureau in litigating the coverage issue.
We have held that one hundred percent of the defense costs incurred by Farm Bureau should not have been assessed to St. Paul. How should these costs be divided? St. Paul contends the costs should be assessed in accordance with the provisions of the "other insurance" clauses of the policies, which provide for contribution by limits. The St. Paul policy provides for $100,00.00 limits per person and $300,000.00 per occurrence, and the Farm Bureau policy provides for $300,000.00 limits per occurrence. The parties agree that for purposes of contributing to a settlement under the indemnity provisions of the policy, the ratio would be 75/25 Farm Bureau to St. Paul. Farm Bureau argues, however, that the other-insurance clause applies only to indemnification and has nothing to do with defense costs. We agree.
In Great Southivest, the court stated the general rule found in Louisiana Civil Code article 1804: "In general, the solidary obligor who extinguishes the debt is entitled to a right of contribution against his codebtors, but must divide his action so that he can demand from each one of them no more than his virile portion." 557 So.2d at 969. St. Paul and Farm Bureau each had an equal duty to defend in this case. We believe they are thus equally liable for the defense costs.
*90 For the foregoing reasons, the judgment of the trial court assessing defense costs must be amended to delete the award of $11,372.73 for the costs of litigating the coverage issue, and to reduce the total award for defense costs to $24,541.20 ($30,525.14 for defense of Hernandez + $18,557.26 for defense of Callegan × 50%).

WERE PENALTIES AND ATTORNEY'S FEES PROPERLY ASSESSED UNDER REVISED STATUTE 22:658?
St. Paul contends the trial court erred in casting it for penalties and attorney fees under Revised Statute 22:658. Farm Bureau contends it is conventionally subrogated by its insurance contracts with Hernandez and Callegan to their rights against St. Paul under 22:658. In support of this proposition it cites two cases, neither of which has anything to do with 22:658. We have reviewed the jurisprudence and have found no case in which an insurer was allowed to recover penalties and attorney fees under 22:658 as an insured's subrogee for breach of duty to defend. In fact, our research revealed only three cases in which penalties were assessed under 22:658 for failure to defend: Hampton v. Rubicon Chemicals, 579 So.2d 458 (La.App. 1st Cir.1991), Allen v. Keeney, 532 So.2d 521 (La.App. 1st Cir. 1988), and Parks Equipment Co. v. Travelers Ins. Co., 293 F.Supp. 1206 (E.D.La. 1968). All three cases involved insureds who were suing to recover the attorney fees they paid when their insurers arbitrarily refused to defend them. They had incurred actual damages because of the insurers' breaches of duty.
Whether an insurer who is conventionally subrogated to its insured's rights under an insurance policy can recover damages under 22:658 is a res nova issue. That issue is complicated in this case by the existence of two insurers who had the duty to defend, only one of whom fulfilled its duty. We must first look at the rights to which Farm Bureau is subrogated under its policies.
The Farm Bureau policies in question both contain this provision: "In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization ...." St. Paul contends that Farm Bureau's cost of defense of its insureds was not "payment under the policy" and thus the subrogation clause in the policy does not apply. It is clear, however, that Farm Bureau was obligated under the policy to pay defense costs. We thus find that defense costs paid on behalf of Callegan and Hernandez were payments under the policy.
But the bigger question we must answer is this: to what rights of its insureds was Farm Bureau subrogated? In order to recover under the statute, the insured has to show that the insurer failed to pay a claim within thirty days after receipt of satisfactory proofs of loss, that the failure to pay was arbitrary and capricious, and that the insured sustained damages as a result of the breach. Farm Bureau states in brief: "St. Paul does not dispute that Farm Bureau suffered damages as a result of St. Paul's actions." Farm Bureau has no claim under 22:658, however, for the damages it sustained. It has only the rights to which it is subrogatedthe rights of Callegan and Hernandez.
Callegan and Hernandez were fully defended in the lawsuit. They incurred no out-of-pocket expenses for legal fees because Farm Bureau provided their defense, as it was required to do under its policy. Revised Statute 22:658B(1) provides for a penalty of "ten percent damages on the amount found to be due from the insurer to the insured" and reasonable *91 attorney fees "for the prosecution and collection of such loss." If Callegan and Hernandez suffered no damage, what is the basis for penalties and attorney fees?
Revised Statute 22:658 is a penal statute, and as such it must be strictly construed. Sutton v. Oncale, 99-967, p. 10 (La.App. 5th Cir.3/29/00), 765 So.2d 1072, 1078; Maxie v. McCormick, 95-1105, p. 6 (La.App. 1st Cir.2/23/96), 669 So.2d 562, 565-66. A strict construction of the statute does not allow for recovery of penalties and attorney fees by an insurer who is subrogated to the rights of an insured who sustained no damage. This statute was intended to protect insureds who were harmed by arbitrary, capricious, or bad faith actions of their insurers. While St. Paul acted arbitrarily in failing to provide a defense, the insureds were not harmed here. The co-insurer simply had to bear the costs of defense alone when those costs should have been shared by St. Paul.
If the legislature had intended to punish insurance companies that failed to share defense costs, it could have done sobut it did not. Perhaps the legislature might consider doing so in the future. But as the law reads now, a strict construction of Revised Statute 22:658 will not allow us to affirm an award of penalties and attorney fees to Farm Bureau. We thus must reverse the award of $100,000.00 in attorney's fees, the ten-percent ($7,045.74) penalty awarded, and the $2,500.00 award for costs associated with prosecuting the claim under 22:658.

SHOULD THE TRIAL COURT HAVE AWARDED DAMAGES AND PENALTIES UNDER REVISED STATUTE 22:1220?
Farm Bureau answered the appeal, contending the trial court erred in failing to award damages and penalties under Revised Statute 22:1220 B(5). Based on some creative calculations, including defining damages as attorneys fees, increasing attorney fees on appeal, and doubling those increased fees, Farm Bureau argues it is entitled to a total recovery of $553,914.36 under 22:1220.
Like 22:658, 22:1220 is a penal statute that must be strictly construed. Denton v. Reed, 98-1056, p. 7 (La.App. 5th Cir.2/23/99), 739 So.2d 217, 221. In Section A, 22:1220 broadly states an insurer's duty to its insured to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. In Section B, 22:1220 enumerates five specific acts that constitute breaches of the duties set forth in Section A.
In Theriot v. Midland Risk Insurance Company, 95-2895 (La.5/20/97), 694 So.2d 184, the supreme court addressed the question of whether the list of acts enumerated in Section B was an exclusive or illustrative list of the activities for which damages and penalties could be awarded under that statute. In concluding that the list was exclusive, the court exhaustively researched the history of 22:1220, noting that the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. 694 So.2d at 186. This research showed that the purpose of the legislature in enacting 22:1220 was to create a private cause of action for the knowing commission of certain egregious claims settlement practices. 694 So.2d at 191-92.
The supreme court's review of the legislative history of 22:1220 makes it clear that the legislature did not intend by the enactment of that statute to impose additional penalties on insurers that breached their contractual duty to defend. An insurer's failure to defend might be an egregious *92 act, but it is not a claims settlement practice that would trigger the application of 22:1220. For this reason, we find the trial court did not err in refusing to award damages and penalties to Farm Bureau under 22:1220.

DID THE TRIAL COURT AWARD IMPROPER COMPOUND INTEREST?
Finally, St. Paul contends the trial court erred in awarding legal interest from date of judicial demand to date of trial, and then interest on the total amount of the judgment (including prejudgment interest) until paid. St. Paul argues this is "interest on interest," which is not favored under Louisiana law. We agree.
Interest on interest should not be awarded absent express legislative authority. Seals v. Morris, 465 So.2d 140 (La. App. 1st Cir.1985). The trial court's award of postjudgment interest on a total sum that included prejudgment interest was an improper award of compound interest, and the decree must be amended to delete that provision.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed insofar as it awards penalties, attorney fees and costs under Revised Statute 22:658, indemnification for the $10,000.00 paid in settlement, and compound interest. The judgment is amended to reduce the award of defense costs from $60,457.43 to $24,541.20. The judgment, as amended, shall read as follows:
Judgment is hereby rendered in favor of the cross-claim plaintiff, Farm Bureau, and against the cross-claim defendant, St. Paul, for damages of $24,541.20, plus legal interest from date of judicial demand until paid and all costs of these proceedings.
Costs of this appeal are to be divided equally between St. Paul and Farm Bureau.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
On original hearing we found that under the facts of this particular case, Farm Bureau could not recover penalties and attorney fees under Louisiana Revised Statute 22:658 because the insured to whose rights Farm Bureau was conventionally subrogated had no right to recover those damages. We further found Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966 (La.1990), did not apply under the facts of this case and thus St. Paul was not liable for 100% of defense costs. We also held Revised Statute 22:1220 does not apply to claims for breach of duty to defend.
On rehearing, Farm Bureau incorrectly asserts we found "Farm Bureau could not be subrogated to its insured[s'] rights under La. R.S. 22:658 against St. Paul." To the contrary, we held that as a subrogee, Farm Bureau could have no greater rights than its insureds. Its insureds had no right to penalties and attorney fees under 22:658 because they had sustained no damages, and thus Farm Bureau, as subrogee, had no such right.[1] Farm Bureau cites language *93 from Great Southwest Fire that a subrogee may assert "any claims the insured might have had against he who caused the loss." What Farm Bureau overlooks, as it did in its original brief, is that the insureds did not sustain a loss.
Farm Bureau also incorrectly asserts we "jurisprudentially added" an actual damages requirement to R.S. 22:658 "without citation to any authority." What greater authority could we cite than the statute itself? As stated in the original opinion, Revised Statute 22:658 B(1) provides for a penalty of "ten percent damages on the amount found to be due from the insurer to the insured" and reasonable attorney fees "for the prosecution and collection of such loss." (Emphasis added.) It is clear from this statutory language that if the insured suffers no loss, and no amount is due the insured by the insurer, there can be no basis for awarding penalties and attorney fees.
On rehearing Farm Bureau argues, as it did in its original brief, that under Great Southwest Fire St. Paul should be forced to pay 100% of the defense costs because St. Paul's failure to defend Callegan forced Farm Bureau to defend him. Farm Bureau was forced to provide a defense to Callegan not because of St. Paul's inaction, but because it had a duty to defend under the eight-corners rule. We again reject Farm Bureau's argument.
Finally, Farm Bureau disputes our interpretation of Revised Statute 22:1220, which we based on the Louisiana Supreme Court's statement in Theriot v. Midland Risk Insurance Company, 95-2895 (La.5/20/97), 694 So.2d 184, 191-192, that the purpose of the legislature in enacting that statute was to create a private cause of action for the knowing commission of certain egregious claims settlement practices. Farm Bureau contends our reliance on the supreme court's statements in Theriot is "clearly inappropriate"; it argues we should not look beyond the language of the statute itself. Despite Farm Bureau's obvious dissatisfaction with the supreme court's declaration of legislative intent, we cannot ignore it, and a consideration of that declaration of intent can lead to only one conclusion: that Revised Statute 22:1220 B(5) cannot apply to the breach of the duty to defend.
NOTES
[1] Plaintiff sued Aetna Casualty and Surety Company as a member company of United States Aircraft Insurance Group, alleging it insured Co-op. In its answer, Co-op stated its insurer was St. Paul. St. Paul then voluntarily appeared in place of Aetna.
[2] Plaintiff also sued the four co-owners of the property leased by Callegan. Only one of those co-owners, Royal Spragio, Jr., was served. He moved for summary judgment, which the trial court granted. She also sued Dirk W. Franklin, Inc., alleging it was Franklin's employer on the date of the incident.
[3] According to the parties' appellate briefs, plaintiff voluntarily dismissed Callegan after Farm Bureau's motion for summary judgment was granted.
[4] Although plaintiff and Farm Bureau had agreed to settle at that point, the settlement was not completed until April 17, 1997. During the same time frame, St. Paul settled plaintiff's claims against Co-op, Franklin, and Franklin, Inc., for $99,000.00.
[5] See Reynolds v. Select Properties, Ltd., 93-1480, p. 7 (La.4/11/94), 634 So.2d 1180, 1185-1186; Yount v. Maisano, 627 So.2d 148, 153 (La.1993).
[1] Farm Bureau states on rehearing that this court incorrectly stated that the issue of whether an insurer who is conventionally subrogated can recover damages under 22:658 was res nova. Perhaps we should have stated that the issue was res nova in this circuit. We were well aware of the third circuit case of Allstate Insurance Company v. Duncan, 96-1603 (La.App. 3d Cir.6/18/97), 703 So.2d 36, but chose to ignore that opinion, which contains little analysis. The only authority cited in Duncan (cited with the "cf." signal, indicating it is simply for comparison), in our opinion does not support the holding.