708 So.2d 772 (1998)
Vonda SANDERS, et al., Plaintiff-Appellant,
v.
INTERNATIONAL INDEMNITY COMPANY, et al., Defendant-Appellee.
No. 97-1061.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1998.
Writ Denied April 24, 1998.
*773 David O'Shee Walker, Alexandria, for Vonda Sanders, et al.
Ronald J. Fiorenza, Alexandria, for International Indemnity Co., et al.
Before THIBODEAUX, GREMILLION and PICKETT, JJ.
PICKETT, Judge.
This suit involves a multi-vehicle accident that happened on April 18, 1994. The accident occurred when the plaintiff, Vonda Sanders, was stopped in traffic on Highway 165 in Pineville, Louisiana when Jimmy Gordon failed to stop and struck her from behind. The impact of the collision then caused the plaintiff to strike the vehicle stopped in front of her and resulting in a chain reaction with several other vehicles. Mr. Gordon was insured with International Indemnity Company and carried the minimum liability coverage mandated of ten thousand per person and twenty thousand per accident. Mr. Gordon's *774 insurer began a concursus proceeding and deposited the policy limits into the registry of the court to be distributed among the thirteen claimants, including Ms. Sanders. On November 22, 1995, a consent judgment was rendered in the concursus proceeding in which Ms. Sanders received $6,418.05. Plaintiff instituted a separate suit against Mr. Gordon, his insurer and her own uninsured/underinsured motorists carrier, Economy Fire and Casualty Company.
Prior to the accident at issue, Ms. Sanders suffered from hydrocephalus, commonly known as water on the brain, which her neurosurgeon, Dr. John Patton, believed to be a congenital condition. Hydrocephalus often caused Ms. Sanders to experience severe headaches for thirteen years prior to the accident. She was placed on medication to control the condition. After the accident she initially was treated by Dr. Robert Rush on the day of the accident for neck and back pain. Later, she again sought treatment by Dr. Patton. Dr. Patton then performed surgery on July 1, 1995 to implant a shunt into Ms. Sanders' head to relieve the pressure created by the increased fluid surrounding the brain. Dr. Patton believed that while Ms. Sanders' condition was preexisting, the condition was aggravated by the April accident which necessitated the surgery. Dr. Patton signed a letter to that effect dated November 29, 1995. Defendant claims that they had no knowledge of the aggravated hydrocephalus prior to the receipt of these letters. Dr. Patton also opined that given Ms. Sanders' age she undoubtedly would require a second surgery to replace the shunt during her lifetime and estimated the cost from $3,000 to $4,000.
Along with a claim for damages against Economy, Ms. Sanders also alleged that Economy was arbitrary and capricious in not tendering unconditional payment. Ms. Sanders' UM policy had a $100,000 limit. Economy first tendered unconditional payment to Ms. Sander on March 13, 1995 in the amount of $4,000 and again on February of the following year in the amount of $31,000. This second tender was given in light of a deposition taken of Dr. Patton which was arranged soon after the receipt of his opinion that the accident aggravated plaintiff's hydrocephalus. Economy also tendered $5,000 in medical payment over various date during this time period. Together with what Ms. Sanders received from the concursus proceeding, her total award is $46,418.05.
After a two day trial on the merits, the trial judge found in favor of the defendant. The trial court found the plaintiff's insurer "fulfilled its statutory obligation and made an unconditional payment of a minimum amount of money over which reasonable minds could not really differ." When plaintiff's counsel inquired whether this ruling also dealt with the issue of increased quantum, the trial court stated the following:
Upon hearing the testimony of the plaintiff in the case, this Court had problems with accepting, totally, the credibility of that witness insofar as the plaintiff's ability to recall exactly what took place as to medical treatment and nature of that treatment.
Also, the period of time that went from when she initially saw Dr. Patton to when she came back the second time, the Court interprets that as, I'm not denying or arguing whether or not she had pain, but I believe that if the circumstances were such that her situation was not so aggravated that she had to go and see a physician at that time in order to seek relief, the medical relief, that would support the additional aggravation or increase in damages for pain and suffering that she may have suffered as a result of this accident.
Plaintiff now appeals this judgment assigning three assignments of error. Plaintiff's third assignment of error is considered abandoned as this assignment has not been briefed or argued. State v. Montgomery, 575 So.2d 471 (La.App. 3 Cir.1991); Rule 2, Section 12.4, Uniform Rules of the Courts of Appeal.

GENERAL DAMAGES
The supreme court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) declared the standard for appellate courts in reviewing awards.
The standard for appellate review of general damage awards is difficult to express *775 and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), ... is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

Id. at 1261.
The Court also stated the proper analysis for determining whether an award given was beyond the trial court's wide discretion.
[T]his court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. [Citations omitted.]

Id. at 1260.
In the present case, Ms. Sanders struck her head twice in the accident, once as the defendant impacted the rear of her vehicle and then when the plaintiff's vehicle struck the vehicle in front of her. She also struck her knees, bruised her arm and aggravated her lower back. Ms. Sanders' hydrocephalus had been previously controlled with medication. However, the accident at issue increased the severity of the condition and the associated headaches to such an extent that Dr. Patton recommended surgery to relieve the growing pressure of fluid. The surgery involved drilling a nickel sized hole in the right side of the plaintiff's skull. Through this hole a catheter is placed which is eventually connected to a two-and-a-half feet long tube leading to the abdomen. If this artificial aqueduct for the fluid ever becomes obstructed, fluid will build up on the brain and the plaintiff will suffer stroke or death. Due to the plaintiff's age, Dr. Patton believes she will require shunt revision surgery in the future.
The plaintiff has also lost some enjoyment of life from the surgery. As a portion of Ms. Sanders' skull was removed, that area offers no protection to her brain. She is unable to participate in activities with her children that might result in an impact to her head.
The total Ms. Sanders received is $46, 418; $17,685 of that amount going to the plaintiff's medical expenses and $3,000 for future medicals.[1] That leaves a general damage award of $25,733. Given the extent of the surgical procedure Ms. Sanders had to endure and will endure in the future, the loss of enjoyment of life, and pain and suffering involved, we feel that the trial court erred in not increasing the award. The trial court's oral reasons given at the conclusion of the trial *776 indicate the court did not believe Ms. Sanders experienced an excessive amount of pain. However, undisputed evidence revealed that Ms. Sanders underwent brain surgery for a condition that was aggravated by the April 18, 1994 accident. It is well settled in our law, a tort feasor takes his victim as he finds him.
The defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. The defendant is liable for the harm it causes even though under the same circumstances a normal person would not have suffered that illness or injury. When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. [Citations omitted.]
Dauzat v. Canal Ins. Co., 96-1261, p. 10-11 (La.App. 3 Cir. 4/9/97), 692 So.2d 739, 745; citing Lasha v. Olin Corp., 625 So.2d 1002, 1005-1006 (La.1993).
We find that an increase of $50,000 is warranted to compensate Ms. Sanders for her pain and suffering, past, present, and future. Reported cases involving hydrocephalus are few and often involve other dramatic injuries. See Williams v. Golden, 95-2712 (La.App. 4 Cir. 7/23/97), 699 So.2d 102; Miller v. Bailey, 621 So.2d 1174 (La.App. 3 Cir.1993). However, we feel this award is legally sound in light of all the facts and circumstances in the present case.

ARBITRARY AND CAPRICIOUS CLAIM
La.R.S. 22:658 provides that all insurers shall pay the amount of any claim due any insured within thirty days of satisfactory proof of loss from the insured. Insurers are liable for penalties when the failure to make payment within thirty days after demand and satisfactory written proof of loss is found to be arbitrary and capricious, or without probable cause. The purpose of the statute is to insure that an insurance carrier, which is fully apprised of the facts and circumstances which establish the plaintiff's right to recovery, does not arbitrarily or capriciously deny a claim that is due. Savoy v. Chapman, 441 So.2d 21 (La.App. 3rd Cir.1983). This statute is penal and must be strictly construed. The burden is on the claimant to prove lack of probable cause, arbitrariness, or capriciousness. Ken Brady Ford, Inc. v. Roshto, 607 So.2d 1062 (La.App. 3 Cir.1992). Where there exists a reasonable dispute as to the amount of loss, the insurer can avoid the imposition of penalties and attorney's fees by unconditionally tendering the part of the claim which is undisputed. LeBlanc v. Underwriters at Lloyd's, London, 402 So.2d 292 (La.App. 3rd Cir.1981). The tender must be made, considering the facts known to the insurer at the time of tender, in an amount over which reasonable minds could not differ was due the claimant. Wyble v. Allstate Insurance Company, 581 So.2d 325 (La.App. 3rd Cir.1991). A trial court's conclusion concerning the assessment of statutory penalties is in part a factual determination which should not be disturbed absent a finding that it is manifestly erroneous. Ken Brady Ford, Inc., 607 So.2d 1062.
In the present case, plaintiff sent notice to the defendant dated September 28, 1995 stating that the aggravation to her hydrocephalus and resulting surgery were caused by the April 1994 accident. Defense maintains never having received this letter. Plaintiff sent another letter along with a letter from Dr. Patton on December 8, 1995 stating his opinion of the causation of the aggravation. After receiving this notice, the defense immediately arranged to depose Dr. Patton. The deposition was held on January 8, 1996. After transcribing the deposition and evaluating the claim, Economy made its final tender of $31,000.
The trial court obviously found that Economy had not received the September 28, 1995 letter and had not received satisfactory proof of loss until Dr. Patton's deposition. "[W]here two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State Through Dept. of Transp. and Development, 617 So.2d *777 880, 883 (La.1993). Therefore, the trial court's findings on this issue were not manifestly erroneous.

CONCLUSION
Therefore, for the reasons assigned, the judgment of the trial court is amended to increase the award paid to Vonda Sanders by $50,000 for a total, along with previous payment made, of $85,000. The judgment of the trial court is affirmed in all other respects.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiff's counsel made an offer of proof to show the future medicals at $13,452 as this evidence was excluded by the trial court for failure to give adequate notice through the pre-trial order. As plaintiff as not shown why this court should allow the evidence, only Dr. Patton's testimony shall be considered and the amount for which reasonable minds could not differ will be used.