933 So.2d 887 (2006)
GRIMALDI MECHANICAL, L.L.C.
v.
THE GRAY INSURANCE COMPANY.
No. 2005-CA-0695.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 2006.
Rehearing Denied July 25, 2006.
*888 Scott E. Frazier, Eric A. Kracht, Kracht & Frazier, L.L.P., Baton Rouge, LA, for Plaintiff/Appellant.
Edward J. Koehl, Jr., Conrad Meyer, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge MAX N. TOBIAS JR.).
CHARLES R. JONES, Judge.
The Appellant, Grimaldi Mechanical, L.L.C., appeals an adverse judgment that granted the Appellee's Cross Motion for Summary Judgment. We reverse and remand.

FACTS AND PROCEDURAL HISTORY
Grimaldi entered into a public works construction contract with the Board of Supervisors, Louisiana State University and A & M College on Behalf of the University of New Orleans (hereinafter "LSU-UNO"), for the construction of a public works project which was designated as "High Temperature Hot Water Distribution System repairs  University of New Orleans (hereinafter "the Project")." The Project work included the installation of approximately 7500 feet of prefabricated and pre-insulated underground hot water piping on the University of New Orleans' campus. Mr. Lucien T. Vivien, Jr., of Lucien T. Vivien & Associates, was designated as the engineer for the Project, and he was required to prepare all of the Project's designs, plans, and specifications. In addition to his engineering duties, Mr. Vivien was also responsible for project administration, which included the inspection and evaluation of the work to be performed by Grimaldi, review and approval of the contractor's applications for payment, and review and approval of requests for changes to the contract price and/or completion time. Based on Mr. Vivien's plans and bid requirements, Grimaldi prepared cost estimates and set various deadlines in its bid for the Project.
After confecting the contract to perform the services, Grimaldi entered into subcontracts with Thermacor Process, LP (hereinafter "Thermacor") to fabricate and supply the pre-insulated hot water piping system, and LTH Mechanical, Inc. to install the same prefabricated hot water piping system at the UNO campus.
The Project began on or around October 21, 2002. The record indicates that although the completion date had been set for March 29, 2003, the date was subsequently changed to May 23, 2003. By late April 2003, sections of the piping system were subjected to testing, or rather "energized," and placed into service.
However, on or about April 25, 2003,[1] Grimaldi received correspondence from Mr. Vivien, which was addressed and directed to Mr. Maurice Laporte of LSU-UNO's Facility Services. In this letter, *889 Mr. Vivien indicated that the piping system was "deformed" because of, inter alia, unrestrained movement that occurred while the system was tested.
In response to Mr. Vivien's correspondence, LSU-UNO issued a "default notice," demanded payment from Grimaldi's surety, ACIC,[2] and suspended all work at the Project location. As a result of LSU-UNO's declaration of default, Grimaldi alleges that its bonding credit was subsequently terminated and its surety refused to issue additional bonds to Grimaldi.
On June 13, 2003, Grimaldi filed a declaratory judgment action against LSU-UNO and Mr. Vivien in the 19th Judicial District Court, in East Baton Rouge Parish. In its Petition, Grimaldi sought to enforce its rights under the construction contract. Grimaldi incurred legal expenses as a result of its declaratory action against LSU-UNO.
On September 11, 2003, LSU-UNO answered Grimaldi's suit and filed a Reconventional Demand seeking monetary damages and alleged, inter alia, defective workmanship and negligence by Grimaldi which resulted in damage to the piping system and surrounding ground and soil. LSU-UNO reiterated and incorporated by reference two exhibits in its Reconventional Demand, "A" and "B," which generally alleged contractual breach and that damage was caused to the piping system and soil when the system was energized.
Upon receipt of the Reconventional Demand, Grimaldi forwarded a copy of the pleading and attached exhibits to its insurer, the Gray Insurance Company. At all times hereto, there was in effect a policy (# XSGL-0727) of commercial general liability (CGL) insurance issued to and on behalf of Grimaldi by Gray.[3] The insurance provided coverage for "property damage" arising from an "occurrence."
Grimaldi argues that as a result of notifying Gray of LSU-UNO's Reconventional Demand, Gray allegedly allocated monies for costs associated with its defense and indemnity of Grimaldi. Gray allegedly informed Grimaldi that it would assume its defense. However, Gray subsequently changed its position, refused further investigation of the matter, and refused to provide a defense to Grimaldi.
Nevertheless, Grimaldi alleges that through its attorney and a mechanical engineering expert, Grimaldi was forced to provide its own defense. Grimaldi propounded substantial written discovery and conducted its own investigation in response to LSU-UNO's Reconventional Demand. The discovery and investigations included extensive analyses of calculations and conclusions made by Mr. Vivien with respect to "the allowable (and exceeded) stresses to the system," which formed the basis of LSU-UNO's claims against Grimaldi. After mediation was conducted in December 2003, a settlement was eventually reached. However, the terms of the settlement agreement between Grimaldi and LSU-UNO are not a part of the record.
Nonetheless, because of Gray's refusal to reimburse monies for expenses incurred in defending the Reconventional Demand action filed by LSU-UNO, Grimaldi subsequently filed a Petition in the Civil District Court for the Parish of Orleans, on May 27, 2004. In its Petition, Grimaldi alleged *890 "an arbitrary failure and refusal to acknowledge and undertake its contractual and legal duties to defend," by Gray.
After initial discovery was propounded, both Grimaldi and Gray filed Motions for Summary Judgment. Grimaldi sought its partial summary judgment on the issue of liability to require Gray to reimburse it for costs incurred as a result of litigation. Gray argued, as mentioned above, that LSU-UNO's Reconventional Demand and "Exhibits A & B," did not contain any allegation of property damage, and that therefore, Gray was not obligated to provide coverage under the CGL policy.
Both motions were heard on February 18, 2005, at which time, the district court refused to consider Grimaldi's offer of extraneous evidence. The district court also concluded that the allegations contained in LSU-UNO's Reconventional Demand unambiguously excluded coverage. On March 2, 2005, the district court granted Gray's Motion for Summary Judgment and denied Grimaldi's Partial Motion for Summary Judgment as to liability. However, in addition to denying Grimaldi's Partial Motion for Summary Judgment, the district court also dismissed Grimaldi's lawsuit against Gray with prejudice. Grimaldi filed this timely appeal.
Specifically, Grimaldi argues that the district court erred in granting summary judgment in favor of Gray, thereby relieving Gray of the duty to defend its insured, where the pleadings at issue did not "unambiguously exclude coverage," and where Gray offered no proper evidence in support of the application for the motion of any exclusions to coverage contained in the policy.

DISCUSSION
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. If the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, there is no genuine issue of material fact, and *891 the movant is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(C)(2).
In Succession of Fannaly v. Lafayette Ins. Co., 01-1355 (La.1/15/02), 805 So.2d 1134, the Louisiana Supreme Court reiterated the general precepts of insurance contracts and defined an insurance policy as "an aleatory, nominate contract subject to the general rules of contract interpretation as set forth in our civil code. See La. Civ.Code arts. 1912, 1914-15. The extent of coverage under an insurance contract is dependent on the common intent of the insured and insurer. See Ledbetter v. Concord General Corp., 95-0809 (La.1/06/96), 665 So.2d 1166, 1169. Thus, when interpreting an insurance contract, courts must attempt to discern the common intent of the insured and insurer. See LSA-C.C. art.2045." Fannaly, at 1137.
In Mossy Motors, Inc. v. Cameras America, 04-0726 (La.App. 4 Cir. 3/2/05), 898 So.2d 602, writ denied, 05-1181 (La.12/9/05), 916 So.2d 1057, this Court summarized an insurance company's duty to defend as follows:
Generally, an insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993); Matheny v. Ludwig, 32,288 (La.App. 2 Cir.9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra. The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2 Cir.3/31/99), 731 So.2d 482. (emphasis ours).
Id., at 606. Additionally, this Court further expounded on determining the duty to defend as follows:
The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the eight-corners rule, under which an insurer must look to the four corners of the plaintiff's petition and the four corners of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291, p. 5 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. Id.

Id., at 606-607.
Gray cites Bryant v. Motwani, 96-1651 (La.App. 4 Cir.10/30/96), 683 So.2d 880 to support its position that its duty to defend has not been triggered in the instant matter because Grimaldi's LSU-UNO's Reconventional Demand and attached exhibits, unambiguously exclude coverage. In Bryant, a plaintiff-employee sought damages from her supervisor and employer's insurer for emotional distress. The employer filed a third-party petition seeking indemnity and duty to defend from its comprehensive general liability (CGL) insurer. The issue presented in Bryant concerned a "bodily injury" exclusion in the insurance policy which precluded the insurer's duty to defend. Even though Bryant points out that the supervisor submitted an affidavit in which he indicated that he was an "executive officer" so as to *892 include him under the "Persons Insured" policy provision, this Court did not fully address the supervisor's affidavit as extraneous, or distinguish it from the exclusive list of pleadings, because the "bodily injury" policy exclusion was evident in the policy. Id.
In its discussion of the duty to defend, this Court mentioned that
[u]nder C.C.P. Art. 852, the pleadings allowed in civil actions include "petitions, exceptions, written motions and answers." Thus, the filing of the written summary judgment motion expanded their pleadings to include the duty to defend issue. The purpose of a pleading is to inform the opponents of the issues, in order to give them an opportunity to present evidence in support of their contentions, and to avoid placing the opponents at a disadvantage by surprise.
Bryant at 884. This Court in Bryant further indicated that
The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. See Collier v. Williams-McWilliams Co., Inc., 459 So.2d 719, 724 (La.App. 4th Cir. 1984). The plaintiff's complaint against the insured is examined with the assumption that all the allegations are true. West Brothers of DeRidder v. Morgan Roofing, 376 So.2d 345, 348 (La. App. 3d Cir.1979). Where the pleadings, taken as true, allege both coverage under the policy and liability of the insured, the insurer is obligated to defend, regardless of the outcome of the suit or the eventual determination of actual coverage. American Home at 259, 230 So.2d 253.
Thus, although the "eight corners rule" is widely accepted, and that all pleadings may be considered concerning a duty to defend, we reiterate that while Gray focuses on the petition, Bryant defines pleadings, pursuant to La. C.C.P. art. 852, to include "petitions, exceptions, written motions and answers." Id. Thus, considering Bryant, pleadings, and the allegations contained therein may be expounded upon by other pleadings. Furthermore, our jurisprudence has also determined that "[a]n insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." (emphasis ours) Sullivan v. Franicevich, 04-0321 (La.App. 4 Cir. 3/9/05), 899 So.2d 602, 608, citing Steptore v. Masco Const. Co. Inc., 93-2064, pp. 8-9 (La. 8/18/94), 643 So.2d 1213, 1218 (citing Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987)).

Grimaldi's Petition against Gray
Grimaldi filed its Petition against The Gray Insurance Company on May 27, 2004. In short, Grimaldi alleged that it had entered into a public works construction contract with LSU-UNO to install underground piping (the Project). Grimaldi's Petition further alleged:
7.
In conjunction with Grimaldi's performance on the project, a dispute developed between Grimaldi and the University, whereupon Grimaldi filed suit against the University to obtain a declaration of rights and obligation under the contract....
8.
The University Responded with a Reconventional Demand against Grimaldi, the University alleged, inter alia, defective workmanship and negligence which resulted in damage to the piping system.
9.
Specifically, in its Reconventional Demand against Grimaldi, the University *893 attached and incorporated by reference certain correspondence from the Project engineer in which he asserted that the piping system sustained physical damage as a result of unrestrained movement which occurred during a testing procedure in April 2003.
10.
Upon receipt of service of the University's Reconventional Demand, Grimaldi immediately notified Gray in writing of the claims asserted by the University.
11.
Despite the required notice of the University's suit and the fact that allegations contained therein implicated coverage and thereby gave rise to the duty to defend under the CGL policy, Gray refused to provide a defense to Grimaldi.
The Petition alleged that once Gray was notified of the claim, pursuant to the duties enumerated in the CGL policy, Gray refused to investigate the allegations contained in LSU-UNO's Reconventional Demand against Grimaldi. Grimaldi further alleged that Gray's refusal to defend was "arbitrary and capricious." The Petition concluded with Grimaldi's prayer for judgment of "all sums deemed reasonable ... together with penalties and attorney's fees, plus legal interest."
Nevertheless, Grimaldi's Petition incorporates by reference another document, namely LSU-UNO's Reconventional Demand, to show that Gray had a responsibility to defend under the CGL insurance policy.

LSU-UNO's Reconventional Demand and Exhibits
In its Reconventional Demand, LSU-UNO alleged that Grimaldi "failed to complete the [P]roject in a workmanlike manner and in accordance with the plans and specifications." LSU-UNO further alleged that "pursuant to the contract, LSU is rightfully withholding monies because of [Grimaldi]'s nonperformance and failure to complete the [P]roject in a timely manner and in accordance with the plans and specifications set forth in the contract...." Along with general allegations of contractual breach, the following paragraphs also appear in the Reconventional Demand:
49.
LSU is entitled to a credit against sums owed to [Grimaldi] for nonconforming work and defective work performed by [Grimaldi], and for work included in the contract but not performed by [Grimaldi].
* * *
54.
The contractor has defaulted and breached its contractual obligations as described in exhibits A and B attached.
* * *
58.
Grimaldi has failed to perform the work in a thorough workmanlike manner.
The Reconventional Demand concluded with a prayer for "an award of damages, liquidated damages, penalties, attorneys' fees, costs, and interest as a result of Grimaldi's breach of contract, misrepresentations, and other acts, omissions, and/or fault which may be shown at trial."

"Exhibits A & B"
Upon examination of the record, "Exhibit A" is a letter from Mr. Vivien, which is dated April 14, 2003, to Mr. Laporte. In the letter, Mr. Vivien specifically discusses *894 two topics:[4] 1) whether or not LSU-UNO should issue Grimaldi a construction change directive (a "CCD"), and 2) whether or not Grimaldi was in default. Mr. Vivien recommended that LSU-UNO not force Grimaldi to perform by issuing the CCD. Mr. Vivien wrote, "[i]nstead of trying to force the Contractor to perform by issuing a CCD, [we] recommend that UNO enforce the terms and conditions of the Contract. Specifically, Mr. Vivien recommends that UNO place the Contractor in default with an opportunity to cure the default." Mr. Vivien's letter alleged a number of violations which included late payments to the Project's subcontractors and suppliers, safety violations, deviations from the Project work plans, and change order price discrepancies. Ultimately, Mr. Vivien certified that Grimaldi was in default and recommended that LSU-UNO notify Grimaldi and its surety of the proposed contract termination. Thus, "Exhibit A," merely lays out the foundational grounds on which Mr. Vivien concluded that Grimaldi may not have been in compliance with the provisions of the contract.
On the other hand, "Exhibit B" is a second letter from Mr. Vivien, dated May 13, 2003, to Mr. Maurice Laporte. In this letter, Mr. Vivien updated[5] Mr. Laporte on the status of the Project. Particularly, the letter discussed Grimaldi's "non-conforming" work and declared that Grimaldi's work was unacceptable due to incomplete calculations by both Thermacor, the piping system's manufacturer, and Grimaldi, with respect to the piping system's stress capabilities. Mr. Vivien indicated that the simulated stress tests calculations, which were run at 150 p.s.i.,[6] were not in compliance with the contract, which expressly required an operating pressure of 200 p.s.i. Based upon the stress tests, Mr. Vivien opined that Grimaldi's calculations "materially underestimate the stresses at the specified operating condition" of the piping system. These developments, Mr. Vivien concluded, formed the basis for placing Grimaldi in "supplemental default."[7]

The Insurance Policy
Looking to the language of the insurance policy alone, the document reads:
1. Insuring Agreement.
a. We will pay sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result....
b. This insurance applies to "bodily injury" and "property damage" only if:

*895 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
(2) The "bodily" "injury" or "property damage" occurs during the policy period ...
From its face, the policy specifically enumerates a "duty to defend" suits which seek "property damage" and "bodily injury" during the policy period. The Gray policy specifically defines "property damage" as "(a.) [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) [l]oss of use of tangible property that is not physically injured." Additionally, the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general conditions."
However, the policy goes on to list several policy exclusions, including the following:
2. Exclusions.
This insurance does not apply to:
a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .
b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) Assumed in a contract or agreement that that is an "insured contract" provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
(2) That the insured would have in the absence of the contract or agreement.
* * *
k. "Property damage" to "your product"[8] arising out of it or any part of it."
l. "Property damage" to "your work"[9] arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
m. "Property damages" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work."
(2) A delay or failure by your or anyone acting on your behalf to perform an agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or *896 "your work" after it has been put to its intended use.
In its Cross Motion for Summary Judgment, Gray argued, as mentioned above, that LSU-UNO's Reconventional Demand along with incorporated "Exhibits A & B," did not contain any allegations of property damage, and that therefore, it was not obligated to provide a defense under the CGL policy. Gray also argued that the allegations contained in the Reconventional Demand do not rise to the level of warranting a duty to defend because the allegations clearly concern a breach of contract and not "property damage" which arose out of an occurrence covered under the CGL policy.
Gray does not address the testing of the piping system as a possible occurrence. Gray contends in brief, "[it] does not dispute that defective workmanship during construction may constitute an occurrence," but Gray does not address that, as a result of the system test, property damage may have occurred which may substantiate the Reconventional Demand filed by LSU-UNO. The record reveals that Gray went through a thorough paragraph by paragraph "analysis" of LSU-UNO's Reconventional Demand" in its effort to substantiate its Cross Motion for Summary Judgment; however, Gray merely offers general interpretations of the paragraphs contained in Grimaldi's Petition and LSU's Reconventional Demand, along with its exhibits, and summarily concludes that the absence of the actual term "property damage" unambiguously excludes insurance coverage under the policy.
Gray's interpretation of the pleadings fails to address that the policy itself defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as "[l]oss of use of tangible property that is not physically injured." The definition also states that "[a]ll such loss of use shall be deemed to occur at the time of the physical injury that caused it." "Exhibits A and B," particularly "Exhibit B," suggest that some damage may have occurred. Further, considering that "Exhibits A and B" were not prepared by Grimaldi in anticipation of litigation, it is of particular concern that Grimaldi has to rely upon LSU-UNO's Reconventional Demand to show that Gray may have had a "duty to defend."
Moreover, considering that Grimaldi and LSU-UNO originally agreed to certain design specifications via contract and had agreed on an extended completion date of May 23, 2003, the record is clear that the design specifications may not have been adhered to. However, the record suggests that LSU-UNO may have ratified some of the changes to the contract by not immediately declaring Grimaldi in default.
Nevertheless, the record also indicates that there was a dispute between Grimaldi and LSU-UNO concerning the absence of concrete anchors Grimaldi allegedly did not install, as well as another dispute concerning the piping system's stress performance calculations that were believed to have been inaccurate. The record indicates that LSU-UNO requested that Thermacor provide accurate system operational data concerning the stress testing, but the data may not have been provided. LSU-UNO imputed Thermacor's failure to provide the requested performance test calculations, to Grimaldi, rather than to Thermacor. These issues were raised as grounds for declaring Grimaldi in supplemental default.
Additionally, the record reflects that after being placed in default on Mr. Vivien's recommendation, and after attempting to cure the "defects" raised in the notice of default, Grimaldi requested that an independent *897 engineer be retained to evaluate Grimaldi's work and to double check Mr. Vivien's recommendations, but to no avail. Thus, there is clearly a dispute as to whether there was merely a contractual breach alleged, or rather a contractual breach along with other allegations of liability based in tort.
Gray argued that "there [were] no facts to support Grimaldi's request for reimbursement of defense costs for litigation expenses under Gray's CGL policy." Gray further contends that its CGL policy "with Grimaldi was specifically intended to cover tort liability with respect to work performed on a particular job site." However, we find this position problematic because contractors routinely confect contracts to build or perform work. With respect to property damage under these particular circumstances, this type of CGL policy may have the effect of excluding most property damages which could arise. Additionally, we have pointed out "an insurer's duty to defend is broader than its liability for damages." Mossy Motors, Inc. v. Cameras America, 04-0726 (La. App. 4 Cir. 3/2/05), 898 So.2d 602, 606.
Gray does not dispute that there was a policy in full force and effect at the time the alleged occurrence took place. Although Gray disputes that it owes Grimaldi a duty to defend under its CGL policy exclusions, in Garcia v. St. Bernard Parish School Bd., 576 So.2d 975 (La.1991), the Louisiana Supreme Court held:
Exclusionary provisions in insurance contracts are strictly construed against the insurer and any ambiguity is construed in favor of the insured. Capital Bank Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. 13 J. Appleman, Insurance Law and Practice 7427 (rev. ed.1976).
Garcia at 976. Therefore, based upon the policy provisions, we conclude that an occurrence took place. As a result of this occurrence, Grimaldi may be liable for the resulting property damage which may have arisen out of the alleged work at the Project site. In fact, the policy exclusion reads that the enumerated exclusions would not apply to liability for damages "[t]hat the insured would have in the absence of the contract or agreement." Thus, based upon our review of the record, our jurisprudence supports our interpretation of the policy provisions which favor coverage.
This case is somewhat of an anomaly. The facts, as reiterated by both parties, concern the installation of a piping system by a contractor. However, the crux of the problem is that Grimaldi has to rely upon the Reconventional Demand and the corresponding exhibits of an adverse party to allege that property damage may have occurred. We conclude that these pleadings may trigger Gray's duty to defend and may require Gray to indemnify Grimaldi for legal expenses incurred as a result of Gray's refusal to defend.
Although Gray alleges that Grimaldi's Petition unambiguously excludes coverage, LSU-UNO's Reconventional Demand, on which Grimaldi relies, alleges both contractual breach and damages. The record indicates that in its Reconventional Demand, LSU-UNO prayed for an award of damages, penalties, attorney's fees, costs, and interest as a result of Grimaldi's breach of contract, misrepresentations, and other acts, omissions, and/or fault. As our case law presupposes that "[a] plaintiff's complaint against the insured is examined *898 with the assumption that all the allegations are true," Bryant at 884, we disagree with Gray and find that there may have been an occurrence which may have resulted in damage to property, thereby triggering Gray's duty to defend under the policy. Thus, we conclude that serious genuine issues of material fact exist which precluded the district court from granting Gray's Cross Motion for Summary Judgment.

DECREE
For the foregoing reasons, we reverse the district court judgment in granting Gray's Cross Motion for Summary Judgment.
REVERSED AND REMANDED.
ARMSTRONG, C.J., concurs.
TOBIAS, J., concurs in the result and assigns reasons.
ARMSTRONG, C.J., concurs.
I concur in the result reached in the majority opinion.
TOBIAS, J., concurs in the result and assigns reasons.
I respectfully concur in the result.
LSU's claims against Grimaldi Mechanical, L.L.C. ("Grimaldi"), when read in the broadest sense, may very well state a claim for damages that when read in conjunction with the comprehensive general liability policy issued by The Gray Insurance Company ("Gray") and the law (the eight corners doctrine) may require Gray to defend Grimaldi for part of LSU's claim. Although ordinarily a comprehensive general liability policy is not intended by the insurer to cover such claims as those of LSU against Grimaldi because LSU's claims sound more in breach of contract than anything else, nevertheless on a motion for summary judgment where this court reviews the matter de novo, I find that the motion for summary judgment should have been denied by the trial court.
NOTES
[1] In Gray Insurance Company's ("Gray") brief, the Vivien correspondence is dated April 14, 2003.
[2] The surety's acronym appears in Gray's brief. The actual name of the surety is not of record.
[3] The Appellee's brief indicates that the policy was issued for the period of November 1, 2001, through November 1, 2003. These dates are consistent with the policy dates in the record.
[4] The letter indicates that the contents of the letter are in response to a request for recommendations by Mr. Shelby, LSU-UNO's attorney.
[5] This May 13, 2003, letter updated Mr. Laporte on the status of the Project since the April 14, 2003 letter. This May letter briefly refers to another letter, dated April 23, 2003, to Grimaldi and its surety from counsel, Mr. Shelby. The April 23rd letter appears in the record and is captioned as a "Notice of Default." The default letter informs Grimaldi and its surety that Mr. Vivien had certified that Grimaldi was in default due to material breaches and instructs Grimaldi to either deny the existence of the breaches or indicate if the breaches had been cured.
[6] P.S.I. is a unit of pressure measurement.
[7] A supplemental default letter, dated May, 19, 2003, was sent to Grimaldi to notify it of its supplemental default.
[8] "Your product" is defined as "any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by: (1) You" ...; and "containers ... materials, parts or equipment furnished in connection with such good or services...."
[9] "Your work," per the policy, means "work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations...."