955 So.2d 715 (2007)
Karen JOHNSON
v.
Mustafa MISIRCI and ABC Insurance Company.
No. 2006-CA-1136.
Court of Appeal of Louisiana, Fourth Circuit.
March 28, 2007.
*716 Raymond P. Ladouceur, Jane C. Alvarez, Ladouceur and Ladouceur, L.L.C., New Orleans, LA, for UM Too, L.L.C.
B. Frank Davis, Howard B. Kaplan, Bernard Cassisa Elliott & Davis, A PLC, Metairie, LA, for Landmark American Insurance Company.
(Court composed of Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, Sr., Judge TERRI F. LOVE).
*717 TERRI F. LOVE, Judge.
This appeal arises from an alleged injury suffered while on the job by Mrs. Karen Johnson. Her worker's compensation claim was denied when she tested positive for marijuana. Mrs. Karen Johnson then filed suit against multiple defendants alleging negligence and strict liability. Landmark American Insurance Company, a third party defendant that insured Mustafa Misirci, d/b/a UM Too, L.L.C., alleges that it owes no duty to defend or indemnify the insured because the lawsuit stems from a worker's compensation claim and was under an insured contract. The trial court granted a motion for summary judgment in favor of UM Too, L.L.C., finding that Landmark American Insurance Company's policy covered and indemnified UM Too, L.L.C. The trial court also found that Landmark American Insurance Company had a duty to defend UM Too, L.L.C. However, the trial court declined to assess penalties against Landmark American Insurance Company for its failure to timely provide the cost of defense to UM Too, L.L.C. Finding that conflicting provisions regarding insurance coverage of liability assumed in an insured contract create ambiguity and that Landmark American Insurance Company did not arbitrarily refuse to provide a defense, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Mrs. Karen Johnson ("Mrs. Johnson") worked as a prep cook at the Italian Pie Restaurant ("Italian Pie") located in Orleans Parish. Upon her arrival at work on August 29, 2003, she turned on the lights and was allegedly[1] hit with a tile from the ceiling. Mrs. Johnson filed a worker's compensation claim, which was denied when she tested positive for, marijuana. Thereafter, she filed a petition seeking damages based on negligence and strict liability against Mustafa Misirci ("Mr. Misirci"), as the owner and operator of the Italian Pie, and ABC Insurance Company ("ABC").
Mr. Misirci, d/b/a UM Too, L.L.C. ("UM"), leased the space utilized as the Italian Pie from Rachel Investors, LLC ("Rachel"). The lease between Mr. Misirci and Rachel stipulated that the lessee indemnifies and assumes liability for damages and injuries occurring on the leased premises. Thus, Mr. Misirci, on behalf of UM, acquired a "Commercial General Liability Coverage" policy ("Policy") from Landmark American Insurance Company ("Landmark") to comply with the lease provision.
Mrs. Johnson asserted in her first supplemental and amended petition that Mr. Misirci was the owner of UM and operator of the Italian Pie. The pleading also added UM and Rachel as additional defendants. Rachel then filed a cross claim against UM and Mr. Misirci due to the lease provisions on indemnification and assumption of liability. Rachel also filed a third party demand against Essex Insurance Company ("Essex") as a third party defendant. Rachel, in its supplemental and amended third party demand, added Landmark as a third party defendant. Then, Rachel dismissed all claims against Essex without prejudice.
Mr. Misirci, individually and on behalf of UM, filed a reconventional demand against Mrs. Johnson alleging that she "faked" the accident and was liable for litigation fraud. Mr. Misirci, individually and on behalf of *718 UM, filed a third party demand making Landmark a third party defendant alleging it owed defense and indemnity. Mr. Misirci, individually and on behalf of UM, filed a motion for summary judgment to dismiss Mrs. Johnson's claims. The trial court granted the summary judgment and dismissed all of Mrs. Johnson's claims against Mr. Misirci and UM with prejudice.
Landmark filed a motion for summary judgment or alternatively a declaratory judgment asserting that the Policy did not require it to defend or indemnify UM. UM filed a cross motion for summary judgment alleging that ambiguities in the Policy mandated that Landmark provide a defense against Mrs. Johnson and seeking penalties for Landmark's failure to defend. The trial court granted UM's cross motion for summary judgment and held: 1) that the Policy provided coverage and indemnification to UM under the assumed contract with Rachel; 2) that Landmark had a duty to defend UM; and 3) that Landmark was not liable for penalties for failure to timely provide the cost of defense to the insured.
Landmark timely filed a devolutive appeal asserting that the trial court erred by finding that the worker's compensation exclusion was ambiguous and that the trial court erred in granting UM's cross motion for summary judgment. UM answered the appeal and asserts that the trial court erred by failing to assess penalties against Landmark for its failure to timely provide the cost of defense.

SUMMARY JUDGMENT
Appellate courts review motions for summary judgment with the same de novo standard as the trial court. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The reviewing court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to find genuine issues of material fact. La. C.C.P. art. 966(B). If the court finds no genuine issues of material fact, the "mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The mover bears the burden of proof. La. C.C.P. art. 966(C)(2).

Interpretation of Insurance Contracts
In Louisiana, insurance policies are "construed by using the general rules of interpretation of contracts." Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. Thus, we must determine the intent of the parties. Id. However, the interpretation of the intent of the parties and the insurance policy provisions must be reasonable and not create a "perversion of the words." Id. Ambiguous insurance policy provisions are construed against the insurer and in favor of the insured. Id., 02-1637, p. 4, 848 So.2d at 580. "[A]n ambiguity exists in an insurance policy when the pertinent provision can reasonably be construed in two different ways." McCarthy v. Berman, D.C., 95-1456 (La.2/28/96), 668 So.2d 721, 726.

Insurer's Duty to Defend
"[A]n insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims." Mossy Motors, Inc. v. Cameras America, 04-0726, p. 6 (La.App. 4 Cir. 3/2/05), 898 So.2d 602, 606. This Court enumerated the insurer's duty to defend as follows:
A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues. Dennis v. Finish Line, Inc., 93-0638 (La.App. 1 Cir. 3/11/94), 636 So.2d 944, 946. It is likewise well-recognized that the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide coverage for damages claims. Steptore v. Masco *719 Construction Co., Inc., 93-2064, p. 8 (La.8/18/94), 643 So.2d 1213, 1218. The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291, p. 5 (La.App. 1 Cir. 3/28/01), 785 So.2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. Id. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Id. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. Employees Ins. Representatives, Inc. v. Employers Reinsurance Corp., 94-0676, p. 3 (La.App. 1 Cir. 3/3/95), 653 So.2d 27, 29.
Generally, an insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Yount v. Maisano, 627 So.2d 148 (La.1993); Matheny v. Ludwig, 32,288 (La.App. 2 Cir. 9/22/99), 742 So.2d 1029. Thus, assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome. Yount, supra; Matheny, supra. The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App. 2 Cir. 3/31/99), 731 So.2d 482.
Id., 04-0726, pp. 5-7, 898 So.2d at 606-07. This Court examines the "four corners of the plaintiff's petition and the four corners" of the insurance policy to determine if a duty to defend exists based on the "eight-corners rule." Grimaldi Mech., L.L.C. v. Gray Ins. Co., 05-0695, p. 8 (La.App. 4 Cir. 6/2/06), 933 So.2d 887, 891. This requires a liberal interpretation of the factual allegations contained in the plaintiff's petition. Id.

The Policy
Rachel required UM to indemnify it "against all claims, losses, liabilities, injuries or damages of whatsoever nature" in congruence with the leased premises. Thus, UM obtained the Policy from Landmark for indemnity. In regards to insured contracts and worker's compensation, the Policy provides:
SECTION I  COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
. . . .
2. Exclusions
This insurance does not apply to:
. . . .
b. Contractual Liability
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract *720 or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract of agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
(a) Liability to such party for, or for the cost of that party's defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies alleged.
. . . .
d. Workers' Compensation And Similar Laws
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
e. Employer's Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an "insured contract". (Emphasis added)
The Policy defines an insured contract, in pertinent part, as follows:
9. "Insured contract" means
a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";
. . . .
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
An endorsement ("Endorsement") to the Policy amends Section I(A)(2)(e) to read: "This exclusion also applies to "temporary workers" and "employees" of subcontractors as well as liability assumed by the insured under an "insured contract"."

Alleged Ambiguity
Landmark avers that the clear and unambiguous language of the Policy *721 documents that it has no duty to defend UM because the worker's compensation exclusion applies; that the insured contract endorsement excludes coverage for all liability assumed by the insured under an insured contract; and if the insured contract endorsement does not apply, UM is not the proper party to benefit from the coverage.
It is undisputed that Mrs. Johnson's alleged injuries occurred during the course and scope of her employment. However, once her worker's compensation claim was denied because of a positive drug test, she filed a petition asserting negligence, which is not covered by worker's compensation. Mrs. Johnson's petition and first supplemental and amended petition does not state a worker's compensation claim, but instead, states a strict liability and negligence claim arising from her injury while working at the Italian Pie. Specifically, Mrs. Johnson avers that the defendants were aware: 1) of the defective condition of the building/ceiling; 2) that stored chairs put weight on the ceiling, which created a dangerous condition; 3) that poorly supported tubing put pressure on the ceiling; 4) that part of the ceiling had fallen prior to her injury; 5) that safety guidelines were not followed; and 6) that they failed to take reasonable steps to prevent her injury.
As stated above, an insurer's duty to defend the insured is more extensive than its liability. Giving a liberal construction to Mrs. Johnson's petition and assuming every fact alleged by Mrs. Johnson is true, the lawsuit falls outside the purview of worker's compensation. Thus, we find Landmark's argument that it owes UM no defense due to the worker's compensation exclusion is without merit. We find Landmark's argument that UM is not the proper party to benefit from the coverage is also without merit. The Policy provides coverage to UM, which indemnifies Rachel.
Landmark then asserts that the Endorsement excluding coverage for liability assumed by the insured under an insured contract in Section I(A)(2)(e) precludes a duty to defend UM. It is undisputed that Rachel and UM's lease agreement is an insured contract. However, the Endorsement amends Section I(A)(2)(e), but does not refer to Section I(A)(2)(b) of the Policy, which states that exclusion does not apply to liability assumed under an insured contract. This creates an ambiguity as to whether Landmark intended to include insured contracts in one provision and exclude it in another. Therefore, two reasonable interpretations of coverage under the Policy exist. Ambiguous provisions are construed against the insurer.
The trial court correctly stated: "When you look at this file you say, I can't figure what you would ever cover." Further, the trial court noted that Mrs. Johnson made a strict liability claim, which it stated, "might not fly, but I think you still have to defend it." Due to the contradictions in the Policy regarding the exclusion of liability assumed in an insured contract in Section I(A)(2)(e) and Section I(A)(2)(b), we find that the Policy does not unambiguously exclude coverage and that Landmark owes a duty to defend UM against Mrs. Johnson's claims.

PENALTIES
The Louisiana Revised Statutes provide that insurers must pay or offer to settle claims within thirty days of "receipt of satisfactory proof of loss." La. R.S. 22:658. When the insurer fails to do so, the trial court may assess penalties if the failure is "arbitrary, capricious, or without probable cause." La. R.S. 22:658. The statute must be strictly *722 construed, as it is penal in nature. Sanders v. Int'l Indem. Co., 97-1061, p. 6 (La. App. 3 Cir. 2/4/98), 708 So.2d 772, 776. The trial court's decision to assess penalties pursuant to La. R.S. 22:658 is partially based on factual determinations and should not be reversed absent a showing that it is manifestly erroneous. A trial court's conclusion concerning the assessment of statutory penalties is in part a factual determination that should not be disturbed absent a finding that it is manifestly erroneous. Sanders, 97-1061, pp. 6-7, 708 So.2d at 776.
UM asserts that Landmark arbitrarily refused to provide a defense to Mrs. Johnson's claims and alleges that Landmark "knowingly misrepresented" the Policy provisions. However, the trial court stated that Landmark's insurance policy was the "worst insurance policy that" it "ever saw." The trial court further stated, in reference to Landmark's insurance policy: "When you look at this file you say, I can't figure what you would ever cover." The trial court refused to assess penalties for Landmark's failure to timely provide the cost of defense to UM, but provided no reasons.
Given the trial court's statement regarding the ambiguity in the Policy coverage and our own review of the policy provisions, we find that it was not arbitrary for Landmark to reasonably believe that it did not owe UM a defense to a claim that originated as a worker's compensation claim. We find that the trial court did not commit manifest error or abuse its discretion in refusing to assess penalties against Landmark.

DECREE
For the reasons assigned above, we find that the trial court did not err in granting the cross motion for summary judgment nor by declining to assess penalties against Landmark.
AFFIRMED.
NOTES
[1] There is evidence in the record that the ADT surveillance video documenting Mrs. Johnson's alleged injury showed the ceiling tile falling prior to her entering the area. She then allegedly pulled a chair over to reach the ceiling and rubbed the ceiling materials on her shoulder to "fake" a workers' compensation injury.